**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| EARL MR.DUNLAP, individually and as assignee of Par3 Technology, Inc., and MANUFACTURING BY DESIGN, INC., )<br><br>Plaintiffs, )<br><br>v. )<br><br>SWITCHBOARD APPARATUS, INC., and DALE MR. HOPPENSTEADT, )<br><br>Defendants. ) | Case No. 1:12-cv-0020-TWP-DKL |

**ENTRY ON PENDING MOTIONS**

This case arises from a business relationship which unfortunately, has gone awry. There are three plaintiffs in this dispute: (1) Par3 Technology, Inc. ("Par3"), a Tennessee corporation specializing in product design and engineering; (2) Manufacturing by Design, Inc. ("MBD"), an Indiana corporation with its principal place of business in Indianapolis; and (3) Earl Dunlap ("Mr. Dunlap"), a citizen of Indiana and a principal of both Par3 and MBD (collectively, "Plaintiffs"). There are two defendants in this dispute: (1) Switchboard Apparatus, Inc. ("SAI"), an Illinois corporation that designs and installs electrical distribution systems for large facilities such as factories, hospitals, and office complexes; and (2) Dale Hoppensteadt ("Mr. Hoppensteadt"), an Illinois citizen who was, at all relevant times, President and CEO of SAI (collectively, "Defendants"). The crux of Plaintiffs' allegations is that, in 2008, Defendants agreed to pay Plaintiffs for engineering work involving the development of an Energy Storage System ("ESS Project"), but ultimately did not hold up their end of the bargain. Eventually, due to insufficient funding, the ESS Project was scuttled and this lawsuit ensued.

Specifically, on December 9, 2011, Plaintiffs filed a 6-count complaint in Marion Superior Court, including claims for "Action on Account," breach of contract, unjust enrichment, replevin, fraud, and a deception/conversion claim for treble damages under Indiana's Crime Victims Statute. On January 6, 2012, Defendants removed the lawsuit to this Court because the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1). Three motions quickly followed. This matter comes before the Court on (1) Dale Hoppensteadt's Motion to Dismiss for Lack of Personal Jurisdiction; (2) Defendants' Motion to Transfer; and (3) Defendants' Motion to Dismiss for Failure to State a Claim on Counts V (fraud) and VI (deception/conversion).

On May 1, 2012, the Court held an evidentiary hearing regarding motions (1) and (2), which share overlapping subject matter. Defendants requested this hearing "[b]ecause the parties dispute facts that may be essential to deciding either or both of these motions[.]" (Dkt. 33 at 1.) For the reasons set forth below, Defendant Dale Hoppensteadt's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 12) is **DENIED**, Defendants' Motion to Transfer (Dkt. 10) is **DENIED**, and Defendants' Motion to Dismiss for Failure to State a Claim (Counts V and VI) (Dkt. 14) is **GRANTED**.

## I. BACKGROUND

For purposes of this background section, the Court will consider the complaint and evidence submitted to the Court in conjunction with Defendants' Motion to Transfer and Mr. Hoppensteadt's Motion to Dismiss for Lack of Personal Jurisdiction. Prior to the ESS Project, Mr. Hoppensteadt knew that Mr. Dunlap lived in Indianapolis, Indiana as the two had worked together on various dealings over the years. In mid-2008, Defendants approached Plaintiffs about providing engineering services for the ESS Project. According to Mr. Dunlap's

declaration, Par3 and MBD submitted a proposal to do certain work for $58,000.00 per month. Defendants did not have sufficient funds to pay this amount. So, instead, Defendants agreed to pay $29,000.00 per month and then "make up" the monthly difference by providing equity stock ownership in the ESS Project – specifically, stock in a company called ESSK Corporation, which would own the relevant technology and patent rights. The parties never entered into a written contract memorializing this agreement.

In 2009, Plaintiffs began performing work on the ESS Project. By the end of 2009, SAI had paid over $600,000.00 on the ESS Project, which included the $29,000.00 per month agreed upon, expenses, and other fees that need not be detailed here. It is undisputed that Par3 – the Tennessee corporation – did the lion's share of the work. MBD, meanwhile, played a much more ancillary role, completing some intellectual property work for which it was paid in full.

In 2010, the relationship among the various Plaintiffs and Defendants began to sour. At this time, SAI stopped making payments (but continued requesting and receiving services from Plaintiff) and represented that the parties needed to obtain outside investor funding to continue the ESS Project. At one point, the parties enlisted the help of Endeavor Capital Management, a private equity firm in Connecticut, but no deal to resurrect the ESS Project ever came to fruition. By early to mid-2011, the ESS Project came grinding to a halt, and Plaintiffs learned that ESSK Corporation never actually existed. The parties hotly dispute the meaning of this latter fact. On one hand, Mr. Hoppensteadt asserts by way of affidavit that "[a]t no time did I, or anyone from SAI, state that ESSK Corporation . . . had been formed to commercialize the ESS Project." On the other hand, Plaintiffs assert in the complaint that "[t]he representations made by Defendants regarding ESSK Corporation and the provision of stock ownership interests to Plaintiffs were

3

false and made with the intent to obtain services, technology and products from Plaintiffs." (Compl. ¶ 41). Additional facts will be added as needed.

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Mr. Hoppensteadt has been named as an individual Defendant in this Indiana lawsuit. But, as he notes in his affidavit, he does not regularly conduct business in Indiana; he does not own, use, or possess real property in Indiana; he has not supplied, or contracted to supply, goods or services in Indiana; and he does not derive substantial revenue or benefit from goods, materials, or services provided or used in Indiana. Given his relatively scant connections to Indiana, Mr. Hoppensteadt argues that this action against him must be dismissed for lack of personal jurisdiction.

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. After the defendant moves to dismiss a claim under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). Where, as here, the court has held a hearing on the issue of personal jurisdiction, "the plaintiff must establish jurisdiction by a preponderance of the evidence." *Id.* A district court must undertake and satisfy a two-step analysis in order to properly exercise personal jurisdiction over a non-resident defendant. First, the exercise of personal jurisdiction must comport with the state's long-arm statute; second, the exercise must comport with the Due Process Clause of the Constitution. *Id.* at 779. Because Indiana's long-arm statute, Indiana Rule of Trial Procedure 4.4(a), "reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the [f]ederal Due Process Clause," the Court only needs to consider the second step of the analysis. *LinkAm. Corp. v. Albert,* 857 N.E.2d 961, 967 (Ind. 2006).

4

Due process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id*. (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). These minimum contacts "must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indus. Co. v. Super. Ct. of Cal.,* 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). Such purposeful availment is required to ensure that defendants may reasonably anticipate what conduct will subject them to the jurisdiction of a foreign sovereign. *Burger King,* 471 U.S. at 472.

Personal jurisdiction may be either specific or general, but only specific jurisdiction needs to be considered here. Specific jurisdiction exists "for controversies that arise out of or are related to the defendant's forum contacts." *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002). It "requires that the defendant purposefully availed itself of the privilege of conducting activities within the forum state so that the defendant reasonably anticipates being haled into court there." *LinkAmerica*, 857 N.E.2d at 967 (citation omitted). The general idea is that defendants should not be brought into a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Id*. (quoting *Burger King*, 471 U.S. at 475). This inquiry demands an assessment of the relationship among the defendant, the forum, and the litigation.

When the defendant's contacts with the forum concern a contractual relationship, the court must "consider the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contact and the parties' actual course of dealing' in determining

5

whether there were sufficient minimum contacts." *Citadel Group Ltd. v. Washington Regional Medical Center*, 536 F.3d 757, 761 (7th Cir. 2008) (quoting *Burger King,* 471 U.S. at 479). A defendant's solicitation of business with the plaintiff is a factor supporting jurisdiction, even where the solicitation "amounted to no more than a single communication that initiated negotiations of the transaction at issue." *Madison Consulting Grp. v. South Carolina,* 752 F.2d 1193, 1203 (7th Cir. 1985).

Some of the relevant contacts supporting the exercise of personal jurisdiction over Mr. Hoppensteadt are summarized as follows:

- Mr. Dunlap and MBD, both Defendants in this matter, are citizens of Indianapolis, Indiana.

- Mr. Hoppensteadt had a pre-existing relationship with Mr. Dunlap, albeit on matters unrelated to the ESS Project and Mr. Hoppensteadt knew that, by dealing with Mr. Dunlap, he was transacting with an Indiana citizen.

- Mr. Hoppensteadt approached Mr. Dunlap about embarking on the ESS Project.

- Par3 and MBD completed at least some of the ESS Project work in Indiana. Notably, it is undisputed that MBD – although it may have played a peripheral role in the ESS Project compared to Par3 – completed certain intellectual property work on the ESS Project in Indiana.

- Mr. Dunlap and Mr. Hoppensteadt talked on the telephone and communicated via email while Mr. Dunlap was located in Indiana.

- In January 2009, Mr. Hoppensteadt traveled to Indianapolis, Indiana for a wedding. At that time, Mr. Dunlap, Mr. Hoppensteadt, and their wives had dinner at a hotel and discussed the ESS Project. Specifically, at the evidentiary hearing, Mr. Hoppensteadt testified that he was fairly certain that they had not discussed the ESS Project, while Mr. Dunlap and his wife, Regan Dunlap ("Mrs. Dunlap"), testified to the contrary. According to her testimony, Mrs. Dunlap did not even want to attend the dinner because she knew that she would be forced to endure conversations about the ESS Project the whole night. To the extent the Court needs to resolve a credibility dispute, it does so in favor of Plaintiffs. Mrs. Dunlap's version of events is most logical and credible. Moreover, this credibility determination is reinforced by and aligns with the general rule that, when it comes to resolving factual disputes that relate to personal jurisdiction in

> the absence of an evidentiary hearing, the plaintiff is entitled to have any conflicts in affidavits or supporting materials resolved in its favor. *Purdue Research,* 338 F.3d at 782.

- According to his testimony at the evidentiary hearing, Mr. Dunlap attended and sometimes hosted certain online "GO TO" meetings from his computer, which was located in Indianapolis, Indiana. Mr. Hoppensteadt attended (i.e. logged into) these meetings.

- Mr. Hoppensteadt made representations to Plaintiffs about ESSK.

In the Court's view, these contacts are sufficient to permit the exercise of specific jurisdiction over Mr. Hoppensteadt in this case. *See, e.g., Citadel Group,* 536 F.3d at 764 (contractual relationship between out-of-state defendant and in-state plaintiff sufficient where significant portion of contract performance was conducted in forum state, even though defendant never visited forum state); *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 580-81 (7th Cir. 1994) (prior telephone negotiations and single meeting in forum state leading to the defendant's purchase of steel subjected defendant to personal jurisdiction); *Heritage House Restaurants, Inc. v. Cont'l Funding Group., Inc.,* 906 F.2d 276, 283-84 (7th Cir. 1990) (finding personal jurisdiction where defendants "reached out" to plaintiffs through telephone calls and mailings); *Lee v. Goshen Rubber Co., Inc.*, 635 N.E.2d 214 (Ind. Ct. App. 1994) (North Carolina salesman had sufficient minimum contacts with Indiana where he solicited, negotiated and formed contract with Indiana employer, travelled to Indiana on two occasions as part of his employment, and maintained contact with employer at its headquarters as part of his employment).

The Court realizes that most of Mr. Hoppensteadt's activities connected to Indiana were done in his capacity as President and CEO of SAI. However, this fact does not meaningfully alter the Court's analysis. Although Defendants did not explicitly invoke it (in fact, they call it a "straw man"), they appear to subtly invite the Court to apply the "fiduciary shield doctrine,"

which precludes a state from exercising jurisdiction over an individual sued in his personal capacity if the only basis is the individual's actions as a fiduciary of a corporation. *Intermatic, Inc. v. Taymac Corp.*, 815 F. Supp. 290, 293 (S.D. Ind. 1993). But the fiduciary shield doctrine cannot save Defendants' argument. As Judge McKinney noted in a thorough and well-reasoned opinion, it is unlikely that the Indiana Supreme Court would embrace this doctrine. *See id.* at 296 ("the fiduciary shield doctrine cannot be asserted to defeat personal jurisdiction in Indiana"). Since that opinion, other distinguished judges in this district (two of which were subsequently elevated to the Seventh Circuit Court of Appeals) have followed Judge McKinney's well-carved path. *See Huber v. House*, 2004 WL 3130618, at *3 (S.D. Ind. Dec. 7, 2004) (Tinder, J.); *CR3 of Indiana, LLC v. Specialty Surfaces Int'l., Inc.*, 2008 WL 3914092, at *2 (S.D. Ind. Aug. 19, 2008) (Hamilton, J.); *Health Management Professionals, Inc. v. Diversified Business Enterprises, Inc.*, 882 F. Supp. 795, 799 (S.D. Ind. 1995) (Barker, J.).

Finally, having determined that Mr. Hoppensteadt's contacts are sufficient to allow the Court to exercise personal jurisdiction, the Court notes that exercising personal jurisdiction over Mr. Hoppensteadt comports with traditional notions of fair play and substantial justice. *See LinkAmerica*, 857 N.E.2d at 967 ("[I]f the defendant has contacts with the forum state sufficient for general or specific jurisdiction, due process requires that the assertion of personal jurisdiction over the defendant is reasonable," which is determined by balancing various factors.). Five factors are relevant to this inquiry, including: (1) the burden on the Defendants; (2) Indiana's interest in adjudicating the dispute; (3) Plaintiffs' interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King,* 471 U.S. at 476-77. Notably, these

factors do not normally justify a determination against personal jurisdiction when a defendant's minimum contacts are adequate. *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 760 (7th Cir. 2010). That principle applies here. Mr. Hoppensteadt lives in a state that neighbors Indiana and has traveled to Indiana on numerous occasions; the State of Indiana has an interest in adjudicating this dispute because Mr. Dunlap is one of its citizens; and Mr. Dunlap has an interest in obtaining relief in Indiana. As for the other factors, they are, at most, "a wash."

As Defendants note, the "essential issue" is "whether it was foreseeable to Mr. Hoppensteadt that he would be personally haled into an Indiana court to defend his conduct in connection with the ESS Project." (Dkt. 29 at 2). As explained above, the Court finds that it was, in fact, foreseeable. Accordingly, Mr. Hoppensteadt's 12(b)(2) motion to dismiss for lack of personal jurisdiction must be denied.

### III. MOTION TO TRANSFER

In a similar vein, Defendants argue that this case simply has no business in Indiana, where, in their view, "the only meaningful point of contact is that Mr. Dunlap resides here." (Dkt. 11 at 2). Defendants insist this case properly belongs in the Northern District of Illinois. The governing statute, 28 U.S.C. § 1404(a), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This entails a two-step process. First, the Court must determine whether this action could have been brought in the Northern District of Illinois in the first place. Second, the Court must determine whether the convenience of the parties and witnesses and the interest of justice favor transfer. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). Defendants bear the burden of showing that the Northern District of Illinois is "clearly more convenient." *Id*.

Defendants easily meet the first prong, as this action could have been brought in the Northern District of Illinois. The real question, then, is whether Defendants can "clearly" show that the balance of factors weighs in favor of transfer. This is a somewhat steep hill to climb, given the Seventh Circuit's admonition that a plaintiff's choice of forum "should rarely be disturbed." *In re National Prestco Industries, Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003). "Rarely, however, is not never," so when a plaintiff's choice of forum has little connection to relevant events, its choice is entitled to little deference. *Id.*; *see also Chi. R.I. & P.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (explaining that plaintiff's choice "has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff"). As discussed above, in this case, some of the relevant events bear a strong relationship to Indiana, so Plaintiffs' choice is entitled to deference.

Turning to the individual § 1404(a) factors, it is clear that they do not overcome this deference. In terms of party convenience, both MBD and Mr. Dunlap reside in Indianapolis, Indiana, while the other parties reside in Tennessee and Illinois. Plainly stated, Indianapolis is as good a place as any to hold this trial. As a general matter, district courts should not transfer cases when doing so would merely shift the inconvenience of the litigation from the defendant to the plaintiff. *Wabash Valley Feed & Grain, LLC v. Hust*, 2011 WL 3902780, at *10 (S.D. Ind. Sept. 6, 2011) (citations omitted). Here, a transfer would merely redistribute inconvenience without providing a net benefit of convenience to the parties.

As for witness convenience, Defendants emphasize that many of the witnesses are scattered throughout the country, and that Chicago, Illinois is a better hub (in terms of direct flights) than Indianapolis, Indiana. Perhaps this factor tilts in Defendants' favor, but not by much. Although Indianapolis may have the quaint and gentle feel of a small town, it is hardly in

the boonies. To the contrary, Indianapolis, Indiana is the twelfth most populated city in the United States. Impressively, in 2011 alone, the Indianapolis International Airport served roughly 7.5 million domestic and international passengers. *See* Indianapolis International Airport, Airport Facts and Statistics, http://www.indianapolisairport.com/information_news/airportFacts.aspx (last visited May 4, 2012). The Court is confident that if Indianapolis poses an inconvenience for the witnesses compared to Chicago, that relative inconvenience will be *de minimis*.

With respect to the "interest of justice," this analysis "relates to . . . the efficient functioning of the courts, not to the merits of the underlying dispute." *Coffey*, 796 F.2d at 221. One factor traditionally considered is which forum can adjudicate the dispute in a speedier fashion. *Id.* Notably, Defendants have offered evidence indicating that, statistically speaking, the Northern District of Illinois would be the speedier forum. This evidence is well-taken. But, in the Court's view, it does not override Plaintiffs' choice of forum and tip the scales in Defendants' favor.

Finally, the Court pauses to observe that if it did not have personal jurisdiction over Mr. Hoppensteadt (or even if personal jurisdiction was a more difficult question), then the motion to transfer would have been granted. Indeed, transfer to a district with clear jurisdiction over the defendant conserves judicial resources and thus serves the interest of justice. *See, e.g.*, *Cherry Communications, Inc. v. Coastal Telephone Co.*, 906 F. Supp. 452, 455 n.4 (N.D. Ill. 1995); *Connexus Credit Union v. Connex Credit Union*, 219 F.R.D. 465, 467-68 (W.D. Wis. 2003). But in light of this Court's ruling with respect to personal jurisdiction, that issue is now effectively moot.

### IV. MOTION TO DISMISS COUNTS V AND VI

Having resolved Defendants' motions relating to jurisdiction and forum, the Court now turns to Defendants' third pending motion, which attacks the substance of two counts of Plaintiffs' complaint. Specifically, Defendants have moved to dismiss Plaintiffs' claims for fraud (Count V) and conversion/deception under Indiana's Crime Victims Statute (Count VI) under Federal Rules of Civil Procedure 12(b)(6) (failure to state a claim) and 9(b) (failure to plead counts with the requisite particularity).

According to Plaintiffs' complaint, Counts V and VI center on a single misrepresentation: Mr. Hoppensteadt represented that a company called ESSK Corporation existed and was owned by SAI, and that Plaintiffs would receive stock in ESSK Corporation as compensation for their work on the ESS Project. In reality, however, ESSK Corporation had not yet come into existence and Plaintiffs never received ESSK Corporation stock (and failed to receive payments for other amounts owed).[1] According to Plaintiffs, Mr. Hoppensteadt made this representation in person, over the telephone, and on internet conferences. Before addressing the merits of Defendants' arguments, a brief review of the operative legal standards is necessary.

### A. Legal Standards

When reviewing a Rule 12(b)(6) motion, the Court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted). However, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and

---

[1] According to Plaintiffs' response brief, Mr. Hoppensteadt also represented that Endeavor Capital Management, the Connecticut private equity firm mentioned above, had bought into SAI and that some of this money would be used for the ESS Project. (Dkt. 22 at 2.) Notably, however, this representation is not found in Plaintiffs' complaint; it is only found in Mr. Dunlap's declaration. Because the Court is not permitted to consider such evidence at the 12(b)(6) stage, it will not consider this latter allegation. As Defendants note, a Rule 12(b)(6) motion tests the sufficiency of the pleadings, not the merits of the case. (And, as a practical matter, it is unlikely that this allegation would alter the outcome.)

the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted). To be facially *plausible*, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Moreover, Plaintiffs must plead the underlying allegations of *both* counts with particularity, as Count VI is subject to the same heightened pleading standard as the common law fraud claim. Fed. R. Civ. P. 9(b); *see also ABN Amro Mortg. Group, Inc. v. Maximum Mortg., Inc.*, 429 F. Supp. 2d 1031, 1042 (N.D. Ind. 2000) ("Because [Indiana's Crime Victims Statute] is premised on a claim of knowing or intentional deception, it sounds in fraud, and is also subject to the specificity requirements of Rule 9(b)."). It is well-settled that Rule 9(b) demands the "who, what, when, where, and how" – the "first paragraph of any newspaper story" – not merely vague and conclusory allegations of false statements. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

**B.     Count V**

Starting with the fraud claim (Count V), Plaintiffs must plead: (i) a material misrepresentation of <u>past or existing facts</u> (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falsity (iv) which was relied upon by the complaining party and (v) which proximately caused the complaining party injury. *Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind. 1996) (citation omitted). Importantly, however, Plaintiffs' fraud claim is predicated on the notion that Defendants "would pay" them ESSK Corporation stock in the

future. *See* Compl. ¶ 10 ("The Defendants represented . . . that ESSK <u>would own</u> the technology and patent rights being engineered and developed by Plaintiffs and that Plaintiffs <u>would receive</u> equity stock in the company in an amount equal to the amount charged for their services.") (emphasis added). As Mr. Dunlap himself notes in his declaration, "[t]he monthly cash payment would be paid when billed and the ESSK [Corporation] stock would accumulate each month worked and <u>the transfer/payment would occur at the end of the ESS Project</u>." (Dkt. 21 at 2) (emphasis added).

Significantly, Indiana law is well-settled that actual fraud "may not be based on representations regarding future conduct, or on broken promises, unfulfilled predictions or statements of existing intent which are not executed." *Biberstine v. New York Blower Co.*, 625 N.E.2d 1308, 1315 (Ind. Ct. App. 1993) (citations omitted; rejecting fraud claim based on representations that plaintiff could keep his stock in the event his employment was terminated because that representation necessarily pertained to a future event); *Heyser v. Noble Roman's, Inc*, 933 N.E.2d 16, 19 (Ind. Ct. App. 2010) ("Actual fraud may not be predicated upon representations of future conduct."). This is even true when, at the time the promise was made, the defendant had "no intention of fulfilling the promise." *Sachs v. Blewett*, 185 N.E. 856, 858 (Ind. 1933) (citations omitted). Plaintiffs might respond that the fraud related to the *present* fact that, contrary to Mr. Hoppensteadt's representation, ESSK Corporation did not yet exist. The Court is not persuaded. The *existence* of ESSK Corporation does not cut to the heart of the fraud allegations. If, for instance, ESSK Corporation was subsequently created and Plaintiffs received the stock they allegedly bargained for, then they would not be damaged. Rather, Plaintiffs were damaged because they believed that, at some point in the future, they would receive stock in ESSK Corporation; unfortunately, that day never arrived.

14

Alternatively, the Court fails to see how Plaintiffs' fraud claim is materially different from their breach of contract claim. They are essentially premised on the same core conduct, resulting in the same injury. Under Indiana law, this fact is fatal to Plaintiffs' claim. *See Dean Kruse Found., Inc. v. Gates*, 932 N.E.2d 763, 768 (Ind. Ct. App. 2010) ("To prevail on a fraud claim, a plaintiff claiming both breach of contract and fraud must prove that the breaching party committed the <u>separate and independent tort of fraud</u> and that such fraud <u>resulted in injury distinct from that resulting from the breach of contract</u>.") (emphasis added). This is another reason why Plaintiffs' fraud claim is not plausible as a matter of law.

**C.     Count VI**

Count VI – which has a component of a conversion claim and a component of a deception claim – also boils down to the allegation that Defendants have failed to pay Plaintiffs what they are owed. The Court begins by analyzing the conversion part of the count. To prevail on a conversion claim, Plaintiffs must establish that Defendants "knowingly or intentionally exert[ed] unauthorized control over the property" at issue. Ind. Code § 35-43-4-3. But, Indiana law is settled that failure to pay a debt "does not constitute conversion as a matter of law" *Puma v. Hall*, 2009 WL 5068629, at *4 (S.D. Ind. Dec. 17, 2009); *see also Tobin v. Ruman,* 819 N.E.2d 78, 89 (Ind. Ct. App. 2004) (wrongful withholding of retained earnings is, at most, a failure to pay a debt, which does not constitute conversion as a matter of law). Here, that is the qualitative nature of Plaintiffs' claim. As the opening paragraph of Plaintiffs' complaint notes, "[t]he Defendants <u>have failed to pay the amounts owed</u> for the services and <u>have failed to provide the ownership interest</u> in the entity that was going to manufacture and sell the product." (Compl. ¶ 1) (emphasis added); *see also* Compl. ¶ 47 ("Defendants failed to pay

15

the amounts owed, and failed to provide Plaintiffs the promised stock ownership in ESSK Corporation.").

Moreover, the Court also finds that the conversion claim is little more "than a repackaged version" of the breach of contract claim, presumably brought to "up the ante" by raising the specter of treble damages. *Dean Kruse*, 932 N.E.2d at 769 (citation omitted). The Indiana legislature has expressed its desire not to criminalize bona fide contract disputes. *Id.* (citation omitted). In the Court's view, allowing this claim to proceed would run contrary to the intent of the Indiana legislature.

As to the "deception" component of Count VI, this analysis is straightforward. The relevant statute, Ind. Code § 35-43-5-3, provides that a person commits deception if he "knowingly makes a false or misleading written statement with the intent to obtain property, employment, or an educational opportunity." Ind. Code § 35-43-5-3(2) (emphasis added). Despite the seeming sophistication of the parties, apparently nothing was put in writing.

For these reasons, Defendants' Motion to Dismiss Counts V and VI is granted. A final issue remains: whether or not to dismiss the counts with prejudice. Plaintiffs only requested the ability to file an amended complaint if the Court "determines that the factual allegations and inferences are not pleaded with sufficient particularity." (Dkt. 22 at 7, 8-9). However, Rule 9(b) is not the basis of the Court's ruling; Rule 12(b)(6) is. Because the Court finds that Counts V and VI were not plausible as a matter of law, allowing Plaintiffs to merely add more detail to the complaint would be futile. Moreover, it is worth highlighting that Plaintiffs largely ignored most of the arguments made by Defendants that were relied on by the Court in this order. Plaintiffs' silence on these issues amounts to a waiver. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("Our system of justice is adversarial, and our judges

are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response."). Accordingly, the Court finds that Counts V and VI should be dismissed with prejudice.

## V. CONCLUSION

For the reasons set forth below, Defendant Dale Hoppensteadt's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 12) is **DENIED**, Defendants' Motion to Transfer (Dkt. 10) is **DENIED**, and Defendants' Motion to Dismiss for Failure to State a Claim (Counts V and VI) (Dkt. 14) is **GRANTED WITH PREJUDICE**.

SO ORDERED.

Date: 05/15/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Ryan Michael Hurley
FAEGRE BAKER DANIELS LLP - INDIANAPOLIS
ryan.hurley@faegrebd.com, deb.lee@faegrebd.com, kris.hagan@faegrebd.com

William Norris Ivers
HARRISON & MOBERLY
wivers@harrisonmoberly.com, acooper@harrisonmoberly.com

Harmony A. Mappes
FAEGRE BAKER DANIELS LLP - INDIANAPOLIS
harmony.mappes@faegrebd.com, judith.gilliam@faegrebd.com

James D. Peterson
GODFREY & KAHN, S.C.
jpeterson@gklaw.com, swilson@gklaw.com, ntalbott@gklaw.com